UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:14-CV-00091-GNS

CHESSAN HAMILTON                                                      PLAINTIFF

v.

ANDERSON FOREST PRODUCTS, INC.
and BILLY J. ANDERSON                                                DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 24) and Defendants' Motion to Strike (DN 32).  For the reasons stated below, the summary judgment motion is **GRANTED IN PART AND DENIED IN PART**.  Furthermore, motion to strike is **DENIED AS MOOT** as the Court did not rely on the evidence proposed to be struck.

## I.       BACKGROUND

This action arises from an alleged sexual assault on Plaintiff Chessan Hamilton ("Hamilton") while working at Defendant Anderson Forest Products, Inc. ("AFP").  (Compl. 3-4, DN 1).  Specifically, Plaintiff alleges that Defendant Billy J. Anderson ("Anderson") groped her and rubbed his genitals on her body on one occasion, and then grabbed her and attempted to kiss her a few weeks later.  (Compl. 3-4; Pl.'s Opp'n to Defs.' Partial Mot. for Summ. J, DN 29 [hereinafter Pl.'s Resp.]).  AFP subsequently terminated Hamilton's employment, which she claims was in retaliation for reporting the assaults.  (Compl. 3-4).

## II.      JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this case arises under the laws of the United States.

### III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion . . . ." *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). "When moving for summary judgment the movant has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists 'a genuine issue for trial.'" *Id.* (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)).

The Court views the evidence in the light most favorable to the non-moving party, however, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Rather, the non-moving party must present facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

2

## IV.   DISCUSSION

In their motion, Defendants seek summary judgment on the hostile work environment and retaliation claims.  Defendants also argue that AFP cannot be vicariously liable for the battery claim, and that the negligent retention and supervision claims should be dismissed.

### A.   Hostile Work Environment

Plaintiff alleges she was exposed to hostile work environment in violation of Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 342.[1]  (Compl. 5).  "A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment."  *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (citations omitted).

In order to establish a *prima facie* case of sexual harassment based on hostile work environment, Hamilton must establish that:  "(1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) the employer is vicariously liable."  *Hamilton v. Sara Lee Corp.*, No. 4:09CV-00122-JHM, 2012 WL 32591, at *3 (W.D. Ky. Jan. 6, 2012) (citation omitted).  In their motion, Defendants argue that any alleged harassment was not severe or pervasive, and that any such harassment did not result in a tangible employment action at the hands of her supervisor which would give rise to vicarious liability.  (Defs.' Mem. of Law in Supp. of Partial Mot. for Summ. J. 5, DN 24-1 [hereinafter Defs.' Mot.]).

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

---

[1] A sexual harassment claim brought under the KCRA is analyzed in the same manner as a claim brought under Title VII.  *See Ammerman v. Bd. of Educ. of Nicholas Cty.*, 30 S.W.3d 793, 797-98 (Ky. 2000).

create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted) (internal citations omitted). In order to determine whether a hostile work environment exists, the Court must consider:  (1) whether the conduct was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive; and (2) whether the victim subjectively regarded the environment as abusive. *See Jordan v. City of Cleveland*, 464 F.3d 584, 599 (6th Cir. 2006).  In making these determinations, the Court must consider whether a reasonable person would find the work environment hostile in light of all the circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

The circumstances in this case, as alleged by Plaintiff, indicate that any reasonable person would find the work environment at AFP hostile.  The conduct in this case certainly appears to have been severe.  The alleged harassment in this case took place on two occasions, July 12 and July 30, 2013.  (Pl.'s Resp. 3-4).  On the first occasion, Anderson allegedly locked Hamilton in her office and proceeded to restrain her, grab her buttocks, and forcibly kiss her.  (Defs.' Mot. 3). In the other incident, Anderson again allegedly restrained and groped Hamilton while rubbing his penis against her body.  (Pl.'s Resp. 5).  During both occasions, Hamilton alleges that Anderson threatened to take the harassment a step further, stating next time he would "have it all" and that "you're not going anywhere."   (Pl.'s Resp. 4-5).   After these events, Anderson allegedly followed and stared at Hamilton at work despite being told to stay away by Hamilton's supervisor, Tony Trobaugh ("Trobaugh").  (Pl.'s Resp. 7).

Plaintiff makes allegations of sexual assault in this case that go far beyond the more common claim of sexual innuendo which typically requires several occurrences to create a

hostile work environment.  The Sixth Circuit has held that a *single* instance of conduct similar to those present in this case created a genuine issue of material fact regarding the existence of a hostile work environment.  In *Ault v. Oberlin College*, 620 F. App'x 395 (6th Cir. 2015), the harasser assaulted the victim in a walk-in cooler by rubbing his penis against her buttocks.  *See id.* at 397.  The Sixth Circuit held this single instance was severe enough that a reasonable jury could find that the behavior subjectively and objectively created a hostile work environment.  *See id.* at 402.

Plaintiff has also created a genuine issue of material fact regarding whether she subjectively believed the AFP work environment was hostile.  On the day of the second assault, Hamilton waited forty minutes to return to her duties until Anderson left the workplace.  (Hamilton Dep. 96:13-16, Dec. 16, 2014, DN 29-1 [hereinafter Hamilton Dep. vol. I]).  Hamilton has testified she has suffered from panic attacks at work and would have days where she would "break down."  (Hamilton Dep. vol. I, 145:14-18).  Trobaugh testified that one of these panic attacks was so severe that Hamilton was lying down on the floor screaming that she needed to be taken to the emergency room and told Trobaugh that the anxiety attacks were due to Anderson's alleged assault.  (Trobaugh Dep. 162:19-25, Oct. 6, 2015, DN 29-3).  Hamilton also asserts her numerous absences from work were a result of the trauma she suffered from these assaults.  (Pl.'s Resp. 8).

Plaintiff need not, however, establish a decline in her "tangible productivity" in the workplace.  *See Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988).  Instead, she must only show the harassment made it "more difficult to do the job."  *Id*.  Plaintiff has met her burden in this case.  The fact that Hamilton suffered from panic attacks at work and feared another assault from Anderson raises a genuine issue of material fact whether the harassment made it more difficult to do her job.  In addition, Hamilton asserts she suffered from "extreme

5

anxiety," which led to her absences in the months after the assault and that her supervisor did not report these absences due to his guilt over the incidents.  (Pl.'s Resp. 8, 23 n.11).  Under these circumstances, Plaintiff has created a genuine issue of material fact regarding the presence of a hostile work environment at AFP.

AFP contends as a matter of law that it cannot be held vicariously liable for Anderson's actions under the *Faragher/Ellerth* doctrine.  (Defs.' Mot. 11).  The *Faragher*/*Ellerth* doctrine provides that an employer is not vicariously liable for the harassment of a supervisor if:  1) the supervisor's harassment did not result in a tangible employment action against the employee; 2) the employer provided preventative or corrective measures; and 3) the employee unreasonably failed to utilize those measures.  *See Keeton v. Flying J, Inc.*, 429 F.3d 259, 262-63 (6th Cir. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).  "If the sexual harassment did result in a tangible employment action, the employer will be strictly liable for the supervisor's sexual harassment." *Id*. at 262.  A termination is considered a tangible employment action.  *See id*. at 263 (citation omitted).

Although AFP contends no tangible employment action was taken against Hamilton, there is no dispute that Hamilton suffered an adverse employment action as she was terminated from her position on February 5, 2014.  (Defs.' Mot. 11; Pl.'s Resp. 1).  The only question before the Court is whether the termination was "at the hands of" her alleged harasser, Anderson, who is the President and CEO of AFP.

In addition to holding the officer position on AFP's Board of Directors, Anderson owns 90% of the shares of the company (with the other 10% being owned by Anderson's son).  (K. Anderson Dep. 17:10-16, Oct. 7, 2015, DN 29-6).  There is proof in the record that Anderson "doesn't answer to anybody" within AFP, and that Anderson worked in the same office as Ina

6

Graves ("Graves"), the human resources manager who terminated Hamilton.  (K. Anderson Dep. 17:21-25; B.J. Anderson Dep. 14:10-19, Oct. 7, 2015, DN 29-5).   These facts indicate Anderson's dominant position within the company and his access and control of the individual who directly took the employment action in this case.

Further, Hamilton has provided compelling statements from both Trobaugh and Graves indicating that Anderson sought to take retaliatory action against Hamilton.   During her deposition Graves characterized Anderson as being unhappy with the accusations of sexual harassment and that Anderson "felt like he was being deprived of privileges" as owner of the company.  (Graves Dep. 24:21-25, Oct. 6, 2015, DN 29-7).   Trobaugh warned Hamilton after reporting the harassment that "they're going to be really watching you, they're going to try to blame you for it . . . they're going to try to get you for falsely accusing.   That's what they're going to try to do."  (Trobaugh Dep. 123:2-4, 125:1-6, Oct. 6, 2015, DN 29-3).   In light of this proof in the record, a reasonable jury could find that the human resource manager terminated Hamilton at Anderson's direction in retaliation for Plaintiff's complaint of harassment.   *See Staub v. Proctor Hosp.*, 562 U.S. 411, 423 (2011).   Therefore, a genuine issue of material fact exists and Defendants' motion regarding Plaintiff's sexual harassment claim must be denied.

**B.     Retaliation**

Defendants also move for summary judgment on Plaintiff's retaliation claim.   (Defs.' Mot. 14).   When a retaliation claim is based upon circumstantial evidence, courts apply the *McDonnell Douglas* burden shifting framework.  *See Scott v. Donahoe*, 913 F. Supp. 2d 355, 364 (W.D. Ky. 2012) (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 402 (6th Cir. 2009)).   Under that framework, a plaintiff bears the initial burden of proving a *prima facie* case of retaliation.  *See id.* at 364-65.   If she meets her burden, the employer must then present a legitimate, non-discriminatory reason for the adverse action.  *See McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802 (1973).  If the employer meets its burden, the employee must prove by a preponderance of the evidence that the employer's stated reason was pretextual.  *See id.*

### 1.    *Plaintiff's* **Prima Facie** *Case*

To meet her initial burden, Hamilton must prove:

> 1) she engaged in activity protected by Title VII; 2) this exercise of protected rights was known to defendant; 3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and 4) there was a causal connection between the protected activity and the adverse employment action or retaliation.

*Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (citation omitted).

Defendants argue that Hamilton cannot show a causal connection between the sexual harassment she allegedly suffered at the hands of Anderson and her termination several months later.  (Defs.' Mot. 14).

The Court finds this argument unconvincing for the same reason that genuine issues of material fact exist regarding Plaintiff's sexual harassment claim.  Hamilton reported Anderson's alleged sexual harassment and Anderson was aware of her report.  Anderson is highly influential within the company that bears his name and the manager who ultimately terminated Hamilton stated Anderson was "not happy" with Hamilton's rejection of his sexual advances.  (Graves Dep. 24:21-25).  Clearly, Anderson knew of Hamilton's report of the alleged sexual harassment, and Hamilton's employment was subsequently terminated.  Therefore, Hamilton has established a *prima facie* case for retaliation.

### 2.    *Employer's Legitimate, Non-Discriminatory Reason*

Because Hamilton has met her initial burden, the burden then shifts to AFP to provide a legitimate, non-discriminatory reason for its decision to terminate Hamilton.  *See Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 688-89 (W.D. Ky. 2014).  Evidence indicates that Hamilton suffered from attendance problems even before the alleged sexual harassment.

(Hamilton Dep. 250:10-25, 251:1-25, Sept. 28, 2015, DN 29-2 [hereinafter Hamilton Dep. vol. II]).   AFP's policy is that employees are subject to termination once absentee hours reach 96 hours in a rolling 12-month cycle.  (Hamilton Dep. vol. II, 250:10-25, 251:1-25).  Plaintiff had accrued nearly 88 absentee hours in the month the assaults occurred.  (Hamilton Dep. vol. II, 250:10-25, 251:1-25).  Plaintiff admits she missed nearly 58 hours of work in the five months following August 2013.  (Pl.'s Resp. 21).

Based upon the evidence in the record, Plaintiff's work record creates an objectively reasonable, non-discriminatory reason for her termination as she was repeatedly absent from work.  *See Clark v. Alcan Aluminum Corp.*, 41 F. App'x 767, 771, 775 (6th Cir. 2002) (finding poor work record with habitual tardiness formed a non-discriminatory reason for plaintiff's termination).  Therefore, the Court finds that AFP has met its burden to articulate a legitimate, non-discriminatory reason for Hamilton's termination.

### 3.    *Pretext*

Because AFP has met its burden, Hamilton must prove by a preponderance of the evidence that AFP's stated reason was pretextual.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  To prove pretext, a "plaintiff may show that (1) the employer's stated reason for terminating the employee has no basis in fact[;] (2) the reason offered for terminating the employee was not the actual reason for the termination[;] or (3) the reason offered was insufficient to explain the employer's action."  *Harris*, 993 F. Supp. 2d at 687 (citation omitted).  "The ultimate question in any retaliation case is whether the employer's adverse action against the employee was motivated by retaliatory intent."  *Reed v. Cedar Cty.*, 474 F. Supp. 2d 1045, 1067 (N.D. Iowa 2007) (internal quotation marks omitted) (quoting *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir. 2006)).

In this case, a reasonable jury could find that Hamilton was terminated for reporting Anderson's alleged harassment rather than her absenteeism and that AFP's stated reason for her termination was not the actual reason. As the Sixth Circuit has noted, "when an 'employer . . . waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up [its] true, longstanding motivations for firing the employee,' the employer's actions constitute 'the very definition of pretext.'" *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009) (quoting *Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007)). A reasonable mind could conclude that AFP waited until Hamilton reached 96 hours of absences in order to terminate her for making harassment complaints against Anderson. Trobaugh noted Hamilton's exemplary performance at work to Graves shortly after Hamilton's termination stating "whatever was needed she could do. She done every job in here." (Trobaugh Dep. 26:1-6). Trobaugh testified that the company would be watching Hamilton, would try to blame her, and would try to get her. (Trobaugh Dep. 129:1-7). While Anderson's deposition testimony reflects his denial that he had the power to fire someone, he acknowledged that everyone at AFP reports to him. (B. Anderson 11:5-21).

Trobaugh went so far as to suggest that Anderson may even have attempted to follow Hamilton outside of work. (Trobaugh Dep. 128:2-3). Graves testified that Anderson was unhappy when he was told he needed to stay away from Hamilton. (Graves Dep. 24:21-25). Based on the foregoing testimony from managers working for AFP, a reasonable mind could find pretext. Hamilton has evidence suggesting Anderson was looking for any excuse to terminate her after she complained of his alleged sexual assault.

"An employer's departure from its own employment policies can constitute circumstantial evidence of discrimination." *Long v. Teacher's Ret. Sys. of Ill.*, 585 F.3d 344, 352-53 (7th Cir. 2009) (citations omitted). As the evidence in the record reflects, AFP deviated

10

from its own attendance policy and company practice by failing to notify Hamilton once she reached 72 hours of absences.  (Graves Dep. 66:8-67:1).

Likewise, AFP was put on notice that Hamilton's absences may have been attributed to Anderson's harassment.  Shortly after harassment occurred, Hamilton purportedly told Trobaugh it was difficult to come to work because of the harassment.  (Hamilton Dep. vol. 2, 236:6-25). During Trobaugh's deposition, he recalled driving Hamilton to the hospital in December 2013, after she had a panic attack at work relating to Anderson's harassment.  (Trobaugh Dep. 160:20-163:23).  The panic attack occurred less than two months prior to Hamilton's termination.  While arising in a different context, the Sixth Circuit has upheld a trial court's finding that an employer's attendance policy was discriminatory because it included absences caused by the employer's discriminatory practices in making the decision to terminate the employee.  *See Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1479 (6th Cir. 1990).

For these reasons, there is a genuine issue of material fact as to whether AFP's stated reason for Hamilton's termination was pretextual.  The Court will deny summary judgment on the retaliation claim.

## C.   Battery

Defendants also move for summary judgment regarding Plaintiff's battery claim.  (Defs.' Mot. 17).  Specifically, Defendants argue AFP cannot be liable for Anderson's actions because they were outside of his course and scope of employment as President and CEO of the company. (Defs.' Mot. 17).  Plaintiff argues that while Anderson may not have been acting in his course and scope of employment, AFP subsequently ratified his conduct.  (Pl.'s Resp. 35).

Vicarious liability does not apply in this action because Anderson's alleged sexual assault serves no conceivable purpose in his role as the President and CEO of AFP.  AFP may still be liable, however, if it subsequently ratified Anderson's sexual assault.  The Kentucky Supreme

Court has defined the term "ratification" as being the after-the-fact approval of conduct. *Univ. Med. Ctr., Inc. v. Beglin*, 375 S.W.3d 783, 794 (Ky. 2011).

A jury could not reasonably find ratification in this case. Plaintiff has established no affirmative approval of anyone with authority within AFP. While it very well may be that other officers within AFP did nothing to stop Anderson's conduct, the record is devoid of any evidence this conduct was subject to approval. Therefore, the Court grants the Defendants' summary judgment motion in regards to AFP's liability for the intentional tort of battery.[2]

### D.    Negligent Retention and Supervision Claim

Defendants finally move for partial summary judgment regarding Plaintiff's negligent retention and supervision claim. (Defs.' Mot. 18). As this Court has stated, "an employee cannot sue her employer for negligent supervision or retention." *Gatlin v. Shoe Show, Inc.*, 3:14-CV-00446-TBR, 2014 WL 3586498, at *6 (W.D. Ky. July 21, 2014) (citation omitted). *See also Grego v. Meijer, Inc.*, 239 F. Supp. 2d 676, 683 (W.D. Ky. 2002) ("Based on the plain language of KRS 342.690(1) and the Kentucky courts' long history of interpreting the Workers' Compensation Act to prohibit tort actions grounded in negligence between an employer and employee, this Court concludes that the exclusivity provision of Kentucky's Workers' Compensation Act bars negligent supervision claims between an employer and employee."). Because Hamilton was an employee of AFP during the alleged assault, she cannot maintain an action for negligent retention or supervision. Therefore, the Court grants Defendant's summary judgment motion regarding this claim.

---

[2] Hamilton still has a valid claim against Anderson individually for battery. While the fellow servant rule bars negligence claims against fellow employees, it does not apply to intentional torts. *See Brewer v. Hilliard*, 15 S.W.3d 1, 6-10 (Ky. App. 1999) (stating that where an employee claimed an injury due to the supervisor's intentional acts, the employee may assert a civil claim against the supervisor).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendants' Motion for Partial Motion for Summary Judgment (DN 24) is **DENIED IN PART** regarding Plaintiff's claims for harassment and retaliation and **GRANTED IN PART** regarding Plaintiff's claims for battery and negligent retention/supervision against Defendant Anderson Forest Products, Inc.; and

2.    Defendants' Motion to Strike (DN 32) is **DENIED AS MOOT**.

**Greg N. Stivers, Judge**
**United States District Court**

September 9, 2016

cc:    counsel of record

13